Charles Edward HAAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 46060.

Court of Criminal Appeals of Texas.

July 17, 1973.

Rehearing Denied Sept. 7, 1973.

Charles F. Baldwin, Fort Worth, for appellant.

Doug Crouch, Dist. Atty., Roger Crampton, Bill A. Leonard and George McManus, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder. Punishment was assessed at seventy years.

The sufficiency of the evidence is not challenged. Suffice it to say that the record reflects that on March 30, 1970, appellant and two other men burglarized the private residence of a sixty-seven year old woman. The woman's hands and feet were bound with black, electrical tape during the commission of the burglary. The woman died due to severe blows to her head caused by either a blunt instrument or the fist and heels of her assailants. A fingerprint expert testified that the appellant's fingerprint matched one found on the black electrical tape that bound the deceased's feet.

■ By his first ground of error appellant contends that the trial court erred when it refused to grant his motion for mistrial after the prosecutor injected before the jury his personal opinion of appellant's guilt.

During the opening voir dire of the jury, the prosecutor made the following statement:

"MR. McMANUS: The penalty for murder——you can also get the electric chair. I have not filed a motion requesting the electric chair in this case. Now, I may have made a mistake——."

An objection was sustained and the jury was instructed to disregard the remark. The ruling cured the error, if any.

■ We find no merit in appellant's second ground of error, that it was improper for the prosecutor to tell the jury panel on voir dire that they could use "common sense, horse sense, your experience during life," to make deductions from the evidence.

■ The third ground of error is a contention that the state improperly put before the jury evidence of appellant's prior conviction. The trial court granted motion in limine upon appellant's request that the court instruct the district attorney and an accomplice witness not to mention the fact that appellant and the witness had met in the Texas Department of Corrections, or to allude to the fact that appellant was in the penitentiary any time prior to this offense. Thereafter, the prosecutor asked the witness the following questions:

"Q. Let's see——Mr. Adwell, I believe you have been to the penitentiary, haven't you?

A. Yes, sir.

Q. When did you get out of the penitentiary?

A. October 14, 1969.

Q. When did you meet Mr. Haas?

MR. BALDWIN: Your Honor, we'll have to go outside the presence of the jury again."

Out of the presence of the jury, appellant's counsel complained that by asking the above questions the prosecutor attempted to and did circumvent the ruling made in the motion in limine and moved for a mistrial.

Appellant argues that the prosecutor's questions were "a deliberate attempt——to circumvent the ruling of the court"; that unless the witness answers "anything other than October the 15th or later, 1969, the appellant is placed in the penitentiary—— and since the jury has already heard the questions, if we don't have an answer for them, they are going to assume he met him in the penitentiary."

The trial court denied the motion for a mistrial and pointed out that the question had not been answered and, although the jury was informed when the witness got out of the penitentiary, they did not know when he went in. The court then admonished the prosecutor about "trying to do indirectly what you can't do directly" and instructed him not to ask the question again and to stay away from the subject altogether. The record reflects compliance with the court's admonition.

No reversible error is shown.

■ By his fourth and fifth grounds of error, appellant contends that the court erred by admitting into evidence a photograph which shows the swollen hands of the deceased, tightly bound in black electrical tape. He argues that the fact that the deceased's hands were taped behind her back could have been established by oral testimony and that the photograph was introduced for the sole purpose of inflaming the minds of the jurors.

In Martin v. State, 475 S.W.2d 265 (Tex.Cr.App.), we discussed the rule re-

garding the admissibility of photographs. Therein we stated:

> "We hold that if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible." 475 S.W.2d at page 267.

See also, Terry v. State, 491 S.W.2d 161 (Tex.Cr.App.).

In the instant case, a verbal description of the body and the scene was admissible. Further, the appellant did not testify and an accomplice witness testified that they taped the deceased's hands behind her back during the commission of the crime. A picture of the taped hnads would be admissible to corroborate that testimony. Clearly, the photograph was admissible into evidence.

The sixth ground of error is a contention that the trial court erred in overruling appellant's motion to suppress the testimony of a witness on the ground that the witness had violated the "rule" in that he had discussed his testimony, concerning some fingerprints on tape binding the deceased's legs, with the prosecutor in the presence of Officer Burkhart, another state witness. The trial court found that the witness, one Mr. Shiller, had not violated the witness rule because he had not yet been sworn as a witness as of the time the appellant al-leged that the witness violated the rule.[1]

■■ Assuming that there was a violation of the rule, this is not in itself automatically reversible error. Romero v. State, 458 S.W.2d 464 (Tex.Cr.App.1970); Hobson v. State, 438 S.W.2d 571 (Tex.Cr.App.1969). It has long been the rule in Texas that a violation of the rule may not be relied upon as a ground for reversal *unless* an abuse of discretion is shown, and until the contrary has been made to appear, it will be presumed on appeal that discretion was properly exercised. Davidson v. State, 386 S.W.2d 144 (Tex.Cr.App.1965). The ultimate test when a witness who has violated the rule has been allowed to testify is whether or not there has been injury done to the defendant. Two relevant criteria are: (1) did the witness actually hear the testimony of the other witness, and (2) did the witness' testimony contradict the testimony of the witness that he allegedly heard. Murphy v. State, 496 S.W.2d 608 (Tex.Cr.App.1973); Day v. State, 451 S.W.2d 508 (Tex.Cr.App.1970).

■ The witness Shiller did not hear the testimony of the other witness, Officer Burkhart. Another point is that Shiller's testimony did not *directly* contradict the testimony of Officer Burkhart. Burkhart had previously testified that he did not detect any fingerprints on the tape that bound the deceased's legs and that he had given the tape to Shiller, of the Fort Worth Crime Lab. Shiller testified that he found one fingerprint of the appellant on this same tape. Therefore, we conclude that, since no abuse of discretion or injury

---

1. In 61 Tex.Jur.2d, Witnesses, Sec. 124, at page 692, it is written:
   "Testimony in a cause comes from witnesses who, under the sanction of an oath and the supervision of the court, relate the facts within their knowledge. . . ."
   and Sec. 125, at page 693, it is written:
   "The administration of an oath to a witness by a competent officer is a fundamental and essential requirement to give his testimony binding force. . . ."
   Article 36.03, Vernon's Ann.C.C.P., provides:

   "At the request of either party, the witnesses on both sides *may be sworn* and placed in the custody of an officer and removed out of the courtroom to some place where they cannot hear the testimony as delivered by any other witness in the cause. This is termed placing witnesses under the rule." (Emphasis supplied.)
   Since Shiller *was not sworn in* as a witness at the time of the alleged violation of the rule, it would indeed appear that no violation could be shown. Cf. Seals v. State, 35 Tex.Cr.R. 138, 32 S.W. 545.

has been shown by the appellant and the fact that the witness Shiller did not hear the testimony of Officer Burkhart or directly contradict it, the error, if any, is not reversible.[2]

Appellant urges, in his seventh ground of error, that a photograph of a fingerprint that the chemist found on the tape removed from deceased's ankle should not have been admitted into evidence. He argues that it was inadmissible because the person that took the photograph was not present to testify.

As with demonstrative evidence generally, the prime condition on admissibility of a photograph is that it be identified by a witness as an accurate portrayal of certain facts relevant to the issue, and verified by such witness on personal knowledge as a correct representation of these facts. 3 Wigmore, Evidence, Sections 790–798a. Thus, the witness who lays the foundation need not be the photographer. In the instant case, the chemist who discovered the fingerprint and directed the photograph be taken testified that the photograph was an accurate portrayal of the fingerprint as he found it on the tape. Such was properly admitted.

It is appellant's contention, in his eighth ground of error, that the court erred in not granting his motion for mistrial on the ground that he was denied a fair trial because of adverse publicity.

A newspaper article that appeared in the Fort Worth Press during the course of the trial was introduced into evidence on appellant's motion for a mistrial. The article discussed matters that were not admitted into evidence.

The record herein reflects that the court admonished the jury before releasing them each afternoon not to read any newspaper articles concerning the trial. No evidence

was offered that any juror violated the court's admonishment, hence no error.

By pro se brief, appellant raises two additional grounds of error. First, he contends he was denied effective assistance of counsel. This contention is clearly not supported by the record.

Second, he complains that he was denied a speedy trial. The appellant in this case was arrested on April 19, 1970. He was indicted on June 9, 1970. Appellant's trial took place on May 10, 1971, thus resulting in a lapse of less than thirteen months between arrest and trial. There is no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Rather, the approach of this court on speedy trial cases is on an ad hoc basis, using a "balancing test" in which the conduct of both the prosecution and the defense are weighed. George v. State, 498 S.W.2d 202 (Tex.Cr.App.1973); McCarty v. State, 498 S.W.2d 212 (Tex.Cr.App.1973).

Some of the factors which we assess in determining whether a particular defendant has been deprived of his speedy trial right under U.S.C.A.Const. Amendments 6 and 14, and Vernon's Ann.St. Const. Art. I, Sec. 10, are: (1) length of delay; (2) the reason for the delay; (3) the appellant's assertion of his rights; and (4) prejudice to the defendant.

As to the length of the delay, the period of time is measured from the time the defendant became the accused. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In this case, there was a delay of less than thirteen months between the date of arrest and date of trial. A thirteen month delay is not so long as to demand a per se determi-

---

2. Although reversible error is not shown in this case, we do not condone the practice of witnesses or prospective witnesses being jointly conferred with during a trial.

nation of a violation of appellant's 6th Amendment rights.

■ Although no reason for the thirteen months delay is assigned, we conclude from our review of the record that there is no error. Appellant does not allege, and the record does not reflect any deliberate effort by the state to delay the trial in this cause. Furthermore, appellant took no action during this thirteen months delay to speed up the criminal process.

■■ A defendant who fails to demand a speedy trial does not forever waive his right. The better rule, as stated by the U. S. Supreme Court, is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Barker v. Wingo, supra. In the case at bar, the appellant made no motion for a speedy trial or any semblance of a request for a speedy trial prior to his actual trial. Thus, we conclude that the appellant failed to assert his right to a speedy trial by not making diligent and repeated efforts. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).

■ Prejudice should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. Some of these interests are: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Appellant makes no showing nor contention whatsoever as to how he was prejudiced. Harris v. State, 489 S.W.2d 303 (Tex.Cr.App.1973); Courtney v. State, 472 S.W.2d 151 (Tex.Cr.App.1971).

In summary, we conclude that appellant failed to show a violation of his 6th Amendment right to a speedy trial.

There being no reversible error, the judgment is affirmed.