Lonnie WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–035–CR.

Court of Appeals of Texas,
Waco.

Dec. 3, 1997.

Lawrence E. Johnson, Waco, Walter M. Reaves, Jr., West, for appellant.

Thomas B. Sehon, Dist. Atty., Marlin, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Lonnie White was indicted for offenses arising out of a violent occurrence at the Sugar Shack in Rosebud, Texas. Allegations in the indictment included murder, as well as the lesser offenses of voluntary manslaughter and deadly conduct which resulted in the death of Percy Hall. White was also indicted for aggravated assault and deadly conduct against Charles Mason. He was tried by a jury and acquitted of the offenses against Mason, but convicted of manslaughter for the death of Hall. Punishment was assessed by the jury at thirteen years in prison plus a $3,000 fine. On appeal, White complains that the court erred in allowing a State's witness to remain in the courtroom in violation of the Rule as well as by admitting evidence of extraneous conduct in violation of Rule 404(b). He also attacks the sufficiency of the evidence to sustain his conviction. We will reverse the conviction and remand this cause for a new trial.

## FACTS

On January 5, 1996, White and several others were gathered at the Sugar Shack. Upon hearing that some men from Bremond were on their way to "cause some trouble," White went to his girlfriend's house to retrieve two guns and returned to the Sugar Shack. Eventually, the men from Bremond arrived and a shoot-out ensued. White fired several shots, including one that hit his friend, Charles Mason. Several bullets from White's gun were found in Percy Hall's body. White fled to San Antonio to evade arrest but was apprehended after only a short period of time.

## THE RULE

### Preservation of complaint

At the beginning of White's trial, the State moved to exempt Texas Ranger Matt Cawthorn from the Rule—which requires that witnesses be excluded from the courtroom during trial. TEX.R.CRIM.EVID. 613. The court granted the motion, stating that it understood that Cawthorn was necessary to the presentation of the State's case.[1] The court overruled White's objection.

---

1. Specifically, the trial judge stated:
 Outside the presence of the jury, the State is requesting that its chief witness—is that ... Mr. Matt Cawthorn, who is a Texas Ranger, be exempted from the Rule excluding all other witnesses under 613(3), and the State's position is that his presence is necessary for the presentation of its case.

The State asserts that we should not consider the merits of White's claim because he did not validly object to exempting Cawthorn from the Rule. The relevant exchange took place as follows:

> [Defense Counsel]: Your Honor, will he be allowed to testify after other witnesses have testified in this case? I mean, will he be allowed to be present—
>
> Court: What order of the proceeding is he going to be testifying for the State?
>
> [Prosecutor]: Your Honor, he may be called more than once depending on the chain of custody situation. I would say perhaps once today and at least one more time, as best I can get his schedule.
>
> Court: All right.
>
> [Defense Counsel]: Your Honor, if he is called as a witness and then recalled, would the Court not allow him to go into matters that have been testified to by other witnesses if he has an opportunity to sit in here and listen to their testimony and then get up and make rebuttal.
>
> [Prosecutor]: I understand his position, Your Honor, but . . .
>
> Court: Overruled.

■ To preserve a complaint for appellate review, a party must have presented to the trial court a timely objection stating the specific grounds for the objection, if the grounds are not apparent from the context. TEX.R.APP.P. 33.1. All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the court is in a position to do something about it. *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). We believe this requirement was met. White objected to the possibility that Cawthorn would be allowed to listen to other witnesses prior to giving his own testimony. The trial judge and the prosecutor were aware of White's concern. The objection was nevertheless overruled without further discussion. We will address the merits of his claim.

## Rule 613

■ Rule 613 provides:

At the request of a party the court *shall* order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a defendant which is not a natural person designated as its representative by its attorney, or (3) *a person whose presence is shown by a party to be essential to the presentation of his cause,* or (4) the victim, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial.

TEX.R.CRIM.EVID. 613 (emphasis added). The Rule serves two purposes. First, it prevents witnesses from tailoring their testimony to fit that of other witnesses. *Kelley v. State,* 817 S.W.2d 168, 171 (Tex.App.—Austin 1991, pet. ref'd). Secondly, it enhances the jury's ability to detect falsehood by exposing inconsistencies in testimony. *Id.* It prevents corroboration, contradiction, and the influencing of witnesses. *Webb v. State,* 766 S.W.2d 236, 239 (Tex.Crim.App.1989). Once it is invoked, unless a witness is excused from the requirements of the Rule, he should not be allowed to hear any testimony in the case or talk to any other person about the case without the court's permission. *Beasley v. State,* 810 S.W.2d 838, 842 (Tex.App.—Fort Worth 1991, pet. ref'd).

■ Exempting a witness from the operation of Rule 613 under the third exception sets the stage for two possible complaints: 1) an assertion that the court did not properly apply Rule 613 in the first instance, and 2) if an objection is made to the exempted witness' later testimony, an assertion that the court erred in overruling that objection. Because the court cannot know what testimony of an exempted witness may be offered later in the trial, that testimony is not a consideration in reviewing whether the court properly exempted the witness under exception three. What may be considered are the representations made by the party seeking the exemption about what the witness' later

testimony will be. We may consider such representations in a review of the initial Rule 613-ruling as part of our determination of whether the party made an adequate showing of necessity. We may also consider such representations along with the actual testimony given if we review the court's later rulings on objections made when the witness actually testifies.

Here, we are presented with only the first type of complaint. White objected to Cawthorn's being exempted, but not to his later testimony. Thus, we will consider only whether the court properly exempted Cawthorn from Rule 613.

### Standard of Review

■ Prior to the adoption of the Rules of Criminal Evidence, the decision to enforce the Rule was discretionary with the court. *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim.App.1994); *Green v. State*, 682 S.W.2d 271, 294 (Tex.Crim.App.1984). Rule 613 *requires* the court to exclude witnesses upon the request of either party unless one of the expressed exceptions applies. *Kelley*, 817 S.W.2d at 171. The party seeking to exempt a witness under Rule 613 has the burden of showing that the claimed exception applies. *Id.; Moore v. State*, 882 S.W.2d at 848. If that party fails to make an adequate showing that the witness should be exempted, but the court nevertheless grants the exemption, the ruling is reviewed under an abuse of discretion standard. *Martinez v. State*, 867 S.W.2d 30, 40 (Tex.Crim.App.1993); *Barnhill v. State*, 779 S.W.2d 890, 892–93 (Tex.App.— Corpus Christi 1989, no pet.).

### Abuse of Discretion

■ The State and the court relied on the third exception in Rule 613 to exempt Cawthorn from the Rule, indicating that Cawthorn was essential to the presentation of the State's cause. Granting or denying the exception found in Rule 613(3) requires the exercise of judicial discretion in determining if the party claiming the exemption has met its burden of establishing that the witness presence is in fact essential. *Kelley*, 817 S.W.2d at 171–72. A conclusory statement that the witness' presence is "essential and necessary" is not enough. *Hernandez v.*

*State*, 791 S.W.2d 301, 306 (Tex.App.—Corpus Christi 1990, pet. ref'd). *Aguilar v. State* teaches that the trial judge should carefully consider the critical importance of the testimony of the witness in determining whether to exempt him. *See Aguilar v. State*, 739 S.W.2d 357 (Tex.Crim.App.1987). Failure to do so is an abuse of discretion. *Id.* at 358.

■ We find no more in the record to support exempting Cawthorn from the Rule than a comment from the court that "his presence is necessary to the presentation of [the State's] case." Nor can we find any evidence in the record to show that the trial court carefully considered the "critical importance" or the impact of Cawthorn's testimony. Like *Barnhill*, where the statement, "under the rules, Judge, we are entitled to have a case worker" did not constitute a "showing" by the State that the witness was essential, we find that the "showing" in the present case is wholly inadequate. *Barnhill*, 779 S.W.2d at 892–93. The State made no attempt to explain the need for Cawthorn's presence; thus, the trial court erred when it failed to properly exercise judicial discretion in exempting him from the Rule. *See Landon v. Jean–Paul Budinger, Inc.*, 724 S.W.2d 931, 939–40 (Tex.App.—Austin 1987, no writ). We now turn to the question of whether the error was harmful.

### At What Point Do We Consider Harm?

In 1973, the Court of Criminal Appeals stated with regard to determining if an abuse of discretion had occurred:

> The ultimate test when a witness who has violated the rule has been allowed to testify is whether or not there has been injury to the defendant. Two relevant criteria are: 1) did the witness actually hear the testimony of the other witness, and 2) did the witness' testimony contradict the testimony of the witness that he allegedly heard.

*Haas v. State*, 498 S.W.2d 206, 210 (Tex. Crim.App.1973). In 1986, *Archer* expanded the scope of the *Haas* criteria. *Archer v. State*, 703 S.W.2d 664 (Tex.Crim.App.1986).

The Court decided that the *Haas* criteria were too restrictive, stating:

> The first Haas criteria is too narrow to give full effect to Art. 36.03 and Art. 36.06 ... The better question is, did the witness actually hear the testimony or confer with another witness without court permission.

*Id.* at 666. In 1987, the Court expanded these criteria to include not only those cases where testimony was allowed in spite of a violation of the Rule, but also to include those situations where the court erred in exempting a witness from the Rule. *See Aguilar,* 739 S.W.2d at 360. The Court determined that the second criteria was likewise too restrictive, changing the language to include corroborating testimony when the witnesses are on the same side. *See id.* In 1993, however, the Court failed to consider the criteria at all, simply finding that "the trial court is vested with discretion and may permit expert witnesses to be exempt from the Rule in order that they may hear other witnesses testify and then base their opinion on such testimony." *Martinez,* 867 S.W.2d at 40. In 1994, the Court again abandoned this analysis, looking only to see if the trial court required an adequate showing that one of the listed reasons for exempting a witness was met. Finding that it was not, the Court then turned its analysis to whether the error was harmless beyond a reasonable doubt. *See* Tex.R.App.P. 81(b)(2)(repealed 1997); *Moore,* 882 S.W.2d at 848. But in 1996, the Court again looked to the criteria to determine if an abuse of discretion had occurred when the court allowed a witness who had violated the Rule to testify. *See Bell v. State,* 938 S.W.2d 35, 50 (Tex.Crim.App. 1996). Because the witness in *Bell* did not meet the second criteria, the Court held that no abuse of discretion had occurred.

We can only conclude that the determination of when to apply the above criteria depends on whether the issue being reviewed is: 1) did the court err in overruling an objection to testimony which was inadmissible as a result of the invocation of the Rule (*e.g.* the witness remained in the courtroom during testimony after the Rule was invoked or discussed the trial with another witness without the court's permission), or 2) whether harm occurred when the court erroneously exempted a witness from the Rule. When the question is of the first type, the above-mentioned criteria are used to determine if overruling the objection to the testimony was an abuse of discretion. If the witness did not hear other testimony, no harm results and the court was correct to allow the testimony. Likewise, if the witness heard other testimony but neither contradicted nor corroborated other witnesses, the same is true. However, if we are determining whether the court erred in exempting a witness from the Rule in the first place, our consideration is limited to whether the requesting party made an adequate showing of one of the exemptions in Rule 613. The criteria come into play only if a witness was improperly exempted and a harm analysis is required.

Although we acknowledge that *Aguilar* did not follow this pattern, we also note that *Aguilar* was decided prior to the promulgation of Rule 613 and former Rule 81(b)(2). At that time, the court had discretion to exempt witnesses from the Rule. *See Goldman v. State,* 130 Tex.Crim. 471, 95 S.W.2d 423 (1936). Now, a showing of one of the enumerated exceptions is required to allow exemption from the Rule, and when a showing is not made, an abuse of discretion occurs. If an abuse of discretion has occurred, we conduct a harm analysis using the criteria to determine if the error requires reversal. Tex.R.App.P. 44.2(b).

### The Harm Test

In *Fowler,* we addressed the application of Rule 44.2(b) to harm which flows from non-constitutional error. *See Fowler v. State,* 958 S.W.2d 853, 864–866 (Tex.App.— Waco 1997, pet. granted). After thorough research regarding the new rule, we concluded the entire record must be reviewed to determine whether the error had more than a slight influence on the verdict. *Id.* at 866. If we find that it did, we must conclude that the error affected the defendant's substantial rights in such a way as to require a new trial. *Id.* If we have grave doubts about the error's effect on the outcome, we must find that the error was such as to require a new trial.

*Id.* Otherwise, we should disregard the error. *Id.*

## Harm Analysis

 Exempting Cawthorn from the Rule was a non-constitutional error. Applying the new harm analysis, we conclude that this error had more than a slight influence on the verdict, thus affecting White's substantial rights. TEX.R.APP.P. 44.2(b); *Fowler,* at 864–66.

In reaching this result, we follow the guidance of previous cases and consider: 1) did Cawthorn actually hear the testimony of another witness, and 2) did Cawthorn's testimony contradict the testimony of a witness from the opposing side or corroborate the testimony of a witness from the same side on an issue of fact bearing upon the issue of guilt or innocence. *Guerra v. State,* 771 S.W.2d 453, 475–76 (Tex.Crim.App.1988); *Loven v. State,* 831 S.W.2d 387, 398 (Tex.App.—Amarillo 1992, no pet.). If both of the above criteria are met, the court's abuse of discretion has most likely resulted in harm. *Guerra,* 771 S.W.2d at 476.

Since Cawthorn was allowed to remain in the courtroom throughout the entire proceedings, the first criteria has been met, and we proceed to the second. Cawthorn's testimony coincided with that of Dr. Almanza with respect to why swabbings for gunshot residue were not taken from the hands of people who were involved in the Sugar Shack incident. He also testified that one witness for the defense testified to things that he did not tell the police when he gave a written statement, thus causing the jury to question that witness' credibility. The prosecutor even asked Cawthorn about specific testimony and asked him to explain why other witnesses testified the way they did.[2] We conclude that Cawthorn's testimony meets the second criteria.

In *Barnhill,* a third factor was added to assess the nature and importance of the witness' testimony. *Barnhill,* 779 S.W.2d at 893. Although the first two criteria were met, the Court in *Barnhill* distinguished its facts from those in *Aguilar,* by pointing to the "critical importance" of the witness' testimony in *Aguilar.* The Court stated:

> Unlike the complaining witness' testimony in *Aguilar,* Williamson's testimony concerned no contested issues and explained routine police conduct. His testimony (concerning his investigation at the site and the mechanical aspects of a flow-meter) which duplicates other witnesses' testimony could be characterized as non-essential background which contains nothing to incriminate appellant. While the trial court abused its discretion in exempting Williamson from the rule without requiring the State to meet the criteria imposed by Rule 613, we find no reversible error because of the nature of the evidence which was improperly introduced through Williamson's testimony. Appellant was not harmed by the trial court's error.

*Id.* Unlike the questionable testimony in *Barnhill,* Cawthorn's testimony did not relate to mere incidental matters. He was the "lead investigator" and one of the State's most important witnesses. He explained, clarified, and bolstered testimony from other State witnesses, while impeaching defense witnesses with discrepancies in prior statements. Because the testimony concerned contested issues going directly to the question of White's guilt, we cannot say that no harm was suffered. Although we cannot say whether the outcome would have been different if Cawthorn had not been allowed to hear the testimony of other witnesses, after a thorough review of the record, we can say that Cawthorn's exemption resulted in more than a slight influence on the verdict; thus, a substantial right was affected. TEX.R.APP.P. 44.2(b). Point one is sustained, and we will

---

2. Specifically, Cawthorn was asked, "were you here day before yesterday or whenever, when Deputy Kirk was not able to tell what that was? ... Why do you think Mr. Kirk might have missed it or not remembered it? Could it have been attached to one of the magazines?" He responded:

> It could have been attached to one of the magazines and thereby looked like just a part of a magazine. This is not a highly usual item that I see in this business on a daily basis. Very rarely do we ever see one of these along with everything else that we gather at a crime scene.

reverse the judgment and remand the cause for another trial.

### Sufficiency Point

Although we will reverse for another trial, we must address White's legal-sufficiency point. *Rankin v. State,* 953 S.W.2d 740 (Tex. Crim.App.1996). White's second point asserts that the evidence was legally insufficient to support his conviction for voluntary manslaughter because his claim of self-defense was uncontradicted. In reviewing a "legally-insufficient evidence point" involving an affirmative defense, we look not to whether the State presented evidence which refuted White's self-defense evidence, but rather we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found against White on the self-defense issue beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991). We believe that a rational jury could have found against White on his self-defense claim beyond a reasonable doubt.

White was aware of potential danger when he left the Sugar Shack to retrieve his guns. The evidence shows that he returned to the Sugar Shack in anticipation of an altercation. The medical examiner testified that Hall was shot four times by White's gun, including at least once in the back. This evidence rebuts White's self-defense claim. Likewise, there was testimony that White was not present when Larkin's life was threatened; therefore, the jury could have rejected White's claim of defense of a third person. Because there was evidence that allowed the jury to resolve the conflicting testimony against White, we overrule his second point of error.

In his third point, White complains of the factual insufficiency of the evidence. Because we will remand for a new trial, we do not reach the merits of this point.

### Other Points

Although it is also unnecessary for us to reach White's remaining points, we recognize that he complains that character evidence was admitted during the guilt-innocence phase of his trial in violation of Rule 404(b). *See* TEX.R.CRIM.EVID. 404(b) (limiting the admissibility of "other crimes, wrongs, or acts"). Specifically, he complains of evidence that he assaults his girlfriend, deals drugs, and is a criminal in general because he owns a "clip loader."

An extraneous offense is "any act of misconduct, whether resulting in a prosecution or not, that is *not shown in the charging papers." Rankin v. State,* 953 S.W.2d at 741. Generally, a defendant must be tried for the offense with which he is charged. He may not be tried for a collateral crime or for being a criminal generally. TEX.R.CRIM. EVID. 404(b); *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Crim.App.1991). When the State attempts to adduce evidence of "other crimes, wrongs, or acts," the defendant must object in a timely fashion to preserve his complaint for appeal. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (on rehearing). After objection, the State must satisfy the court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character to show that he acted in conformity therewith. TEX. R.CRIM.EVID. 404(b). If the court decides that the evidence has "no relevance apart from character conformity," then it is inadmissible. *Montgomery,* 810 S.W.2d at 387.

The State may, however, persuade the court that an "other purpose" such as those set forth in Rule 404(b) will be served by admission of the extraneous-offense evidence. *Id.* at 387–88; TEX.R.CRIM.EVID. 401, 404(b). The relevance may be that the evidence "tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity[,] or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory . . . ." *Montgomery,* 810 S.W.2d at 387–88. If the court determines that the evidence is relevant, it *must* engage in the balancing test of Rule 403, if a proper objection is made. *Id.*

On review, because the trial judge has the "best vantage" from which to determine relevancy, we will not substitute our judgment

for the trial judge's unless the ruling is outside the bounds of "reasonable disagreement." *Id.* at 391; *see also Rogers v. State,* 853 S.W.2d 29, 32 (Tex.Crim.App.1993).

Here, although it is difficult to find such a connection between the extraneous acts admitted into evidence and the offense with which White was charged, we do not reach the points. We are confident that the court will give the question of whether such evidence is admissible thorough consideration prior to admitting it in the new trial.

The judgment is reversed and the cause is remanded for a new trial.