William Peter Marshall v. Karen Renee Marshall















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-275-CV

     WILLIAM PETER MARSHALL,
                                                                              Appellant
     v.

     KAREN RENEE MARSHALL,
                                                                              Appellee
 

From the 253rd District Court
Liberty County, Texas
Trial Court # 62401
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      William Peter Marshall appeals from a divorce decree. To date, the clerk’s record has not
been filed. Rule of Appellate Procedure 37.3(b) provides that if an appellant fails to pay or make
arrangements to pay the clerk’s fee for preparation of the record, the Court may:
dismiss the appeal for want of prosecution, unless the appellant was entitled to proceed
without payments of costs. The court must give the appellant a reasonable opportunity
to cure before dismissal.

Tex. R. App. P. 37.3(b).
      More than thirty days have passed since the clerk’s record was due. By letter dated
November 26, 2002, we notified Marshall of this defect and warned him that his appeal would be
dismissed for want of prosecution if he did not make the necessary arrangements for the filing of
the clerk’s record. Id. 37.3(b), 42.3, 44.3. We received a letter from Marshall on December 2
in which he states, “I am terminating the appeals on the above stated divorce case. I request no
records be forwarded.”
      We construe this as a motion to dismiss the appeal. Therefore, this appeal is dismissed. Id.
42.1(2).
                                                                         PER CURIAM
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Appeal dismissed
Opinion delivered and filed December 31, 2002
Do not publish
[CV06]



stify; line-height: 0.388889in">      No search warrant may issue unless supported by an affidavit setting forth substantial facts
establishing probable cause for its issuance. See Tex. Code Crim. Proc. Ann. arts. 1.06,
18.01(b) (Vernon Supp. 2002). Probable cause to support the issuance of a search warrant exists
when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of
the search is probably on the premises at the time the warrant is issued. See Cassias v. State, 719
S.W.2d 585, 587 (Tex. Crim. App. 1986); Davis, 27 S.W.3d at 667. Only the facts found within
the four corners of the affidavit may be considered. See Jones v. State, 833 S.W.2d 118, 123
(Tex. Crim. App. 1992); Davis, 27 S.W.3d at 667. Reasonable inferences may be drawn from
the affidavit, however, and the affidavit must be interpreted in a common sense and realistic
manner. See Lagrone v. State, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); Davis, 27 S.W.3d
at 667. The magistrate is not required to find proof beyond a reasonable doubt or by a
preponderance of the evidence, but only a probability that contraband or evidence of the crime will
be found in a particular place. Johnson v. State, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990),
rev'd on other grounds, Heitman v. State, 815 S.W.2d 681, 685, 690 (Tex. Crim. App. 1991). 
It is reasonable for the magistrate to consider the specific relevant experience of a law enforcement
officer in making a determination of whether there is a fair probability that contraband will be
found in a particular place. Mahmoudi, 999 S.W.2d at 73.
      Both affidavits contain essentially the same language. The affiant was Stephen Hawkins, an
investigator with the Texas Comptroller of Public Accounts. Hawkins had been an investigator
for the past 13 years. He had been a certified police officer for the past 6 years. He had
participated in and been the case agent in the investigations of numerous criminal offenses
involving fuel taxes, sales taxes, and tobacco taxes conducted by the Texas Comptroller of Public
Accounts.
      The facts that Hawkins relied on to base his belief that evidence of the offense could be found
in Ololade’s pickup and house are as follows:
      1.   A large number of treasury warrants issued by the Comptroller had been deposited into
five accounts at a bank in Houston, Texas. The warrants, exceeding $400,000, were
issued for rebates on fuel taxes. One of the named payees on the warrants, Joseph
Sarnello, neither applied for nor received any treasury warrants for any purpose. Over
the last two years, Sarnello had been the victim of an identity takeover.
 
      2.   Another payee, in whose name a bank account was opened and treasury warrants
deposited, was Donald Fehrenback. Fehrenback had not opened an account and had not
received any treasury warrants. He did not apply for any fuel tax rebates. Fehrenback
had also been a victim of an identity takeover.
 
      3.   The funds from the five accounts in one bank were traced to two accounts in another
Houston bank. The name on the two accounts was Olugbenga Adejoke. The funds from
those accounts were then wire transferred to accounts in Nigeria. 
 
      4.   Ololade was an employee with the Texas Comptroller of Public Accounts for about 4
years. For the past two years, he had been assigned to process and authorize the payment
of fuel tax refunds. Each warrant made payable to Fehrenback was authorized for
payment by Ololade. A review was conducted, and it was determined that hundreds of
warrants had been issued by Ololade in the names of people who had been victims of
identity takeovers. An original claim for fuel tax refund in Fehrenback’s name was
located in Ololade’s trash can at his work station.
 
      5.   A residence in Houston linked to Adejoke was searched. About 100 names and social
security numbers were discovered. Cell phone records of Adejoke showed a number of
calls to Ololade’s home phone number.
 
      6.   Pursuant to a warrant, Ololade was arrested at the offices of the Texas Comptroller of
Public Accounts. A cell phone was observed at his workstation. At the time of his
arrest, Ololade stated that he saved a lot of money, but not at the bank. He also had on
his person a receipt for a payment of about $5,000 cash to his Sears credit card. He also
had 12 credit cards in his possession.
 
      7.   Ololade owned two vehicles. One was a 1996 Chevrolet pick-up which was parked in
a State parking garage. The other was a 1995 Lexus L-S 400 which was purchased from
a dealership in Houston with checks from Adejoke made payable to the dealership. In
the affidavit for the search warrant of Ololade’s residence, Hawkins noted that Ololade
stated he had paid about $18,000 for the Lexus. Ololade also stated the Lexus was
completely paid for.

      Hawkins then stated that, based on his knowledge and experience in criminal investigations,
people who work together in conducting financial crimes often share in the proceeds of their
crimes and that people working for others perpetrating financial crimes are often paid for their
services. He also stated that, based on his knowledge and experience, people who own cell
phones, have many credit cards, and deal with financial institutions will typically maintain records
of those activities at their place of residence and often in their automobiles. Hawkins also believed
that people who engage in complex financial crimes typically maintain records of their illegal
activities and typically will maintain all or some of those records at their residences or in their
automobiles.
      The focus of Ololade’s complaint with the search warrants is on these last statements that are
based on Hawkins’s knowledge and experience. He contends that these statements are too general
and conclusory and fail to establish probable cause to believe items would be found in his home
or pick-up. See Robuck v. State, 40 S.W.3d 650 (Tex. App.—San Antonio 2001, pet. ref’d). We
disagree.
      Based on the totality of the circumstances, and not just these statements based on knowledge
and experience, the magistrate who issued the search warrants had sufficient facts to find a
probability that contraband or evidence of the crime would be found in Ololade’s home and pick-up. He was entitled to rely on Hawkins’s knowledge and experience in making this determination. 
Thus, the trial court did not err in denying Ololade’s motion to suppress. His first issue is
overruled.
The Rule
      In his second issue, Ololade contends that the trial court erred in exempting a State’s witness
from the exclusion of witnesses rule. See Tex. R. Evid. 614. Specifically, Ololade argues that
the State did not prove that the presence of Bryan Vaclavik, an investigator and witness for the
State, during trial testimony was essential to the presentation of the State’s case.
      Rule 614 provides: “At the request of a party the court shall order witnesses excluded so that
they cannot hear the testimony of other witnesses....” There are several exceptions to this rule. 
The rule does not authorize the exclusion of a person whose presence is shown by a party to be
essential to the presentation of the party’s cause. Tex. R. Evid. 614(3). The party seeking to
exempt a witness under the rule has the burden of showing that the claimed exception applies. 
Moore v. State, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994); White v. State, 958 S.W.2d 460,
463 (Tex. App.—Waco 1997, no pet.). If that party fails to make an adequate showing that the
witness should be exempted, but the court nevertheless grants the exemption, the ruling is
reviewed under an abuse of discretion standard. Martinez v. State, 867 S.W.2d 30, 40 (Tex.
Crim. App. 1993); White, 958 S.W.2d at 463.
      In this cause, the State filed a motion to exempt Vaclavik from Rule 614. In the motion, the
State contended that it had relied on Vaclavik’s expertise and working knowledge of the complex
investigation of Ololade. The State also claimed that Vaclavik had participated in the
investigation, prosecution, and trial preparation of Ololade’s theft case. It considered Vaclavik
essential to the prosecution. In support of these claims, the State attached an affidavit from
Vaclavik in which he listed his credentials and stated:
I have been involved in the case against [Ololade] since its inception in August,
2000. I have participated in: all pertinent interviews, analyzing all the bank records
which will be used during the trial, obtaining evidentiary documents and the review of
all the evidence from four search warrants. I have also helped organize and prepare over
100 exhibits.

After hearing Ololade’s objections, the trial court granted the State’s motion.
      Under these circumstances, the State’s motion and supporting affidavit were more than mere
conclusory statements of necessity. Cf. White, 958 S.W.2d at 463; Hernandez v. State, 791
S.W.2d 301, 306 (Tex. App.—Corpus Christi 1990, pet. ref’d); Barnhill v. State, 779 S.W.2d
890, 892-93 (Tex. App.—Corpus Christi 1989, no pet.). The State made a sufficient showing of
an exemption to Rule 614. Cf. Bath v. State, 951 S.W.2d 11, 23 (Tex. App.—Corpus Christi
1997, pet ref’d); Kelley v. State, 817 S.W.2d 168, 172 (Tex. App.—Austin 1991, pet. ref’d). 
Thus, the trial court did not abuse its discretion in exempting Vaclavik from the application of
Rule 614. Ololade’s second issue is overruled.
Conclusion
      Having overruled each of Ololade’s issues on appeal, the trial court’s judgment is affirmed.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed October 30, 2002
Do not publish
[CRPM]