In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00044-CR

                                                ______________________________

 

 

                              CALVIN WAYNE BURNHAM,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                       Trial Court
No. 2005-C-0007

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Calvin
Wayne Burnham appeals from his convictions by the trial court on four charges
of aggravated sexual assault of a child and four charges of indecency with a
child.  Burnham has filed a single brief,
in which he raises issues common to all of his appeals.[1]  He argues that the trial court committed
reversible error in considering evidence from a previous revocation hearing
when granting the State’s second amended motion to adjudicate guilt and in
admitting the results of a polygraph examination.  Burnham also complains that the evidence was
insufficient to establish that he violated any conditions of his community
supervision. 

            We
addressed these issues in detail in our opinion of this date on Burnham’s
appeal in cause number 06-10-00038-CR. 
For the reasons stated therein, we likewise conclude that reversible
error has not been shown in this case.

            We
affirm the trial court’s judgment.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          December
14, 2010

Date Decided:             December
15, 2010

 

Do Not Publish











[1]Burnham
appeals from four convictions of aggravated sexual assault of a child and four
convictions of indecency with a child, cause numbers 06-10-00038-CR through 06-10-00045-CR.









ontact if he engaged
in sexual contact with the victim or caused the victim to engage in sexual
contact with him, and the victim was younger than seventeen years of age.  Tex.
Penal Code Ann. § 21.11(a)(1) (Vernon Supp. 2010).  Sexual contact means “any touching of any
part of the body of a child, including touching through clothing, with the
anus, breast, or any part of the genitals of a person” “if committed with the
intent to arouse or gratify the sexual desire of any person.”  Tex.
Penal Code Ann. § 21.11(c) (Vernon Supp. 2010).  A person acts intentionally with respect to
the nature of his conduct when it is his conscious objective or desire to
engage in the conduct; a person acts knowingly with respect to the nature of
his conduct when he is aware of the nature of his conduct.  Tex.
Penal Code Ann. § 6.03(a), (b) (Vernon 2003).

            B.        Factual Background and Analysis 

            Fifteen-year-old K.S. went to Nail City in the mall to
get her “nails done” in preparation for her appearance on the high school
homecoming court.  Tran was K.S.’s nail
technician.  After applying cuticle oil
to her hands, K.S. “walk[ed] to the back and started washing” her hands in a
room containing two sinks.[1]
 The room was described as a “pretty
tight space.”  K.S. testified:

I started washing my hands and [Tran] came back
there and he started -- at first he had his hand on my back and he made his way
down and he kind of -- he rubbed my bottom and he kind of patted it and grabbed
it a little and he said, you are very beautiful.  And then he went to the next sink and he
stuck his hands under the water. 

 

After washing his hands, K.S.
said Tran “kind of moved over sideways and rubbed his front side up against my
backside.  And then he said, very
beautiful.”  He then “grabbed a paper
towel” to dry his hands.  K.S. reiterated
“whenever he came to get a paper towel he just kind of slid over and was just
right behind me and stood there for a second -- . . . . He just -- he kind of
just slid straight behind me and kind of pushed up behind me and then he went
and got a paper towel.”  The following
testimony served as clarification:

            Q.        . . . . How do you know it was his
penis?

 

            A.        Because I felt it.

 

            Q.        You don’t think it could have been
anything else?

 

            A.        No. 
If he was doing that to me, that really could have been the only
thing.  There was no other purpose of him
rubbing up against me.

 

During cross-examination, K.S.
stated, “[T]here honestly wouldn’t be anything else if he was purposely rubbing
up against me.  That’s what it had to
have been.”  She then said Tran’s pen,
lighter, wallet, pack of cigarettes, or cell phone could have touched her.  

            K.S.
finished washing her hands.  En route to
the manicure station, she saw Patricia Ann Latting, an adult family friend,
sitting at an adjacent manicure station and “started telling her what had
happened,” but “got real quiet” as Tran approached to finish her nails.  K.S. “tried to whisper . . . the rest of the
story” to Latting, but Tran “just kind of told me what to pay him real quick
and was just like, okay, okay.  Like kind
of rushed me off.”  K.S. paid for Tran’s
services and spoke again with Latting. 
Latting described K.S. as “so bubbly” before she went to the sink, and
like a “zombie” when she came back. 
Latting knew “[s]omething happened to her,” and her suspicion was
confirmed when K.S. told her Tran “touched her.”  Next, K.S. located her mother in the mall and
told her mother what had happened.  K.S.
was described by her mother as “white as a piece of paper and just very upset.”  

            K.S.’s
mother confronted Tran and the manager. 
During the conversation, K.S. heard Tran “trying to tell the manager
that he was just trying to put my cell phone in my back pocket.  But I had sweat pants on, with no pockets and
my cell phone had been in my purse back at the station.”  Latting testified she had gotten her nails
done at Nail City over a hundred times and was never followed to the sink in
the back room by her nail technician.  

            Tran
argues the evidence was insufficient to establish that he touched K.S. with his
sexual organ as opposed to a pen, lighter, wallet, pack of cigarettes, or cell
phone.  “The testimony of a child sexual
abuse victim alone is sufficient to support a conviction for aggravated sexual
assault.”  Ozuna v. State, 199 S.W.3d 601, 606 (Tex. App.––Corpus Christi
2006, no pet.) (citing Tex. Code Crim.
Proc. Ann. art. 38.07(a) (Vernon 2005); Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978)).  In this case, the jury was free to believe
that K.S. felt Tran’s penis touch her backside, testimony that established that
Tran touched K.S., who was younger than seventeen, with his genitals.  The jury could find this act was done with
specific intent to arouse or gratify Tran’s sexual desire from Tran’s conduct
in following K.S. to the room in the back of the nail shop, patting her back,
rubbing her bottom, commenting on her beauty, and then trying to justify his
actions by claiming he was attempting to place K.S.’s cell phone in her
nonexistent back pocket.  See McKenzie
v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981).  Thus,
we find the evidence legally sufficient to establish each element of indecency with
a child by contact beyond a reasonable doubt. 


II.        There Was No Error in
Allowing K.S.’s Father to Testify Over Rule 614 Objection

            Tran
argues the victim-impact testimony of K.S.’s father during the punishment phase
should have been struck from the record after it was discovered that he
violated Rule 614 of the Texas Rules of Evidence.  Rule 614 states that “[a]t the request of a
party the court shall order witnesses excluded so that they cannot hear the
testimony of other witnesses.”  Tex. R. Evid. 614.  Rule 614 is commonly referred to as “the
Rule.”  The purpose of the Rule is to
prevent witnesses from changing their testimony based on the testimony of
another.  Webb v. State, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989).  Additionally, it improves the jury’s ability
to decipher false testimony by revealing inconsistencies in witnesses’
testimony.  White v. State, 958 S.W.2d 460, 462 (Tex. App.––Waco 1997, no
pet.).

            Standard of Review 

            It
is within the trial court’s discretion to allow the testimony of a witness who
has violated the Rule.  Bell v. State, 938 S.W.2d 35, 50 (Tex.
Crim. App. 1996).  

[T]he ruling of the trial court on an objection to
a witness testifying when he has remained in the courtroom after having been
placed under the “rule” may not be relied upon as a ground for reversal unless
an abuse of discretion is shown; and until the contrary has been shown, it will
be presumed on appeal that such discretion was properly exercised.

 

Id. (citing Valdez v. State,
776 S.W.2d 162, 170 (Tex. Crim. App. 1989). 
In reviewing a trial court’s decision to allow testimony after an
alleged violation of the Rule, we analyze “(a) whether the witness actually
conferred with or heard testimony of other witnesses, and (b) whether the
witness’s testimony contradicted testimony of a witness from the opposing side
or corroborated testimony of a witness he had conferred with or heard.”  Id.
(citing Webb, 766 S.W.2d at 240).

            Before
opening statements, the Rule was invoked, and the trial court instructed the
witnesses to “stay outside the courtroom” and refrain from speaking about the
case with each other.  The State
commented that K.S.’s father was “not a witness,” and the court allowed him to
remain in the courtroom as “a visitor.” 
When K.S.’s father was called as the State’s only witness during the
punishment phase, Tran’s counsel objected based on the Rule.  The objection was overruled, and K.S.’s
father provided victim-impact testimony.  


            In
Bell v. State, the Texas Court of
Criminal Appeals acknowledged that the witness who violated the court’s Rule
614 admonishments “could potentially have been affected by having heard
testimony from appellant’s punishment witnesses.”  Id.  However, the court noted that the witness’ “testimony
and opinions clearly were based upon his own experiences and investigations in
the instant case,” “were not based upon any testimony from appellant’s
witnesses at punishment,” and did not contradict any testimony from the
witnesses he observed.  Id. at 50–51.  The court found that because there was not
any “evidence that the testimony [the witness] heard influenced his own
testimony,” the trial court did not abuse its discretion in permitting him to
testify.  

            As
in Bell, K.S.’s father’s victim-impact
testimony was based on his personal observations, rather than upon testimony
from witnesses during the guilt/innocence phase.  His testimony did not contradict the
testimony of any of the witnesses he observed. 
Moreover, Tran’s brief does not claim, and the record does not
demonstrate, that testimony from the witnesses during guilt/innocence otherwise
influenced K.S.’s father’s victim-impact testimony.  In the absence of such an argument, we apply
the presumption that the trial court exercised its discretion properly in
allowing K.S.’s father to testify. 
Therefore, this point of error is overruled.[2]  

III.       Conclusion


            We
affirm the trial court’s judgment. 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          February 9, 2011

Date Decided:             February 15, 2011

 

Do Not Publish











[1]Only
a portion of the room was visible from the manicure stations.  





[2]In
its brief, the State claims that “if this Court was inclined to remand for
punishment, the State requests that the full punishment range for this offense
be in effect.”  The State points out that
while the offense Tran was convicted of was a second-degree felony, the jury
was charged with, and the judgment reflects, a punishment range for a third-degree
offense.  This issue was not raised by
Tran, and is not an issue of reformation.  When a judgment and sentence improperly
reflects the findings of the jury, the proper remedy is reformation of the
judgment.  Aguirre v. State, 732 S.W.2d 320, 327 (Tex. Crim. App. [Panel Op.]
1982) (op. on reh’g).  Here, the jury was
charged with an incorrect punishment range. 
Nevertheless, the State may not now raise this issue.  The State is entitled to appeal a sentence in
a case on the ground that the sentence is illegal, but must do so within twenty
days after the sentence to be appealed is entered by the court.  Tex.
Code Crim. Proc. Ann. art. 44.01(a), (b), (d) (Vernon Supp. 2010).  We decline to address the State’s argument by
circumventing our jurisdictional limitations as proscribed by Article 44.01 of
the Texas Code of Criminal Procedure.