

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00124-CR

_____

TAM TRAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 25803

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Tam Tran was convicted by a jury of indecency with a child by contact and was sentenced to seven years' confinement. Tran argues that the evidence was legally insufficient to support his conviction. He also complains that the trial court erred in allowing the victim's father to testify at punishment because he sat in the courtroom during the guilt/innocence phase of the trial, in violation of Rule 614. We will affirm the trial court's judgment.

## I. Legally Sufficient Evidence Supported Tran's Conviction

### A. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of indecency with a child by contact beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

2

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Under a hypothetically-correct jury charge, Tran committed the offense of indecency with a child by contact if he engaged in sexual contact with the victim or caused the victim to engage in sexual contact with him, and the victim was younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon Supp. 2010). Sexual contact means "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" "if committed with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.11(c) (Vernon Supp. 2010). A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct; a person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 2003).

### B. Factual Background and Analysis

Fifteen-year-old K.S. went to Nail City in the mall to get her "nails done" in preparation for her appearance on the high school homecoming court. Tran was K.S.'s nail technician. After

3

applying cuticle oil to her hands, K.S. "walk[ed] to the back and started washing" her hands in a room containing two sinks.[1] The room was described as a "pretty tight space." K.S. testified:

> I started washing my hands and [Tran] came back there and he started -- at first he had his hand on my back and he made his way down and he kind of -- he rubbed my bottom and he kind of patted it and grabbed it a little and he said, you are very beautiful. And then he went to the next sink and he stuck his hands under the water.

After washing his hands, K.S. said Tran "kind of moved over sideways and rubbed his front side up against my backside. And then he said, very beautiful." He then "grabbed a paper towel" to dry his hands. K.S. reiterated "whenever he came to get a paper towel he just kind of slid over and was just right behind me and stood there for a second -- . . . . He just -- he kind of just slid straight behind me and kind of pushed up behind me and then he went and got a paper towel." The following testimony served as clarification:

Q. . . . . How do you know it was his penis?

A. Because I felt it.

Q. You don't think it could have been anything else?

A. No. If he was doing that to me, that really could have been the only thing. There was no other purpose of him rubbing up against me.

During cross-examination, K.S. stated, "[T]here honestly wouldn't be anything else if he was purposely rubbing up against me. That's what it had to have been." She then said Tran's pen, lighter, wallet, pack of cigarettes, or cell phone could have touched her.

---

[1]Only a portion of the room was visible from the manicure stations.

K.S. finished washing her hands. En route to the manicure station, she saw Patricia Ann Latting, an adult family friend, sitting at an adjacent manicure station and "started telling her what had happened," but "got real quiet" as Tran approached to finish her nails. K.S. "tried to whisper . . . the rest of the story" to Latting, but Tran "just kind of told me what to pay him real quick and was just like, okay, okay. Like kind of rushed me off." K.S. paid for Tran's services and spoke again with Latting. Latting described K.S. as "so bubbly" before she went to the sink, and like a "zombie" when she came back. Latting knew "[s]omething happened to her," and her suspicion was confirmed when K.S. told her Tran "touched her." Next, K.S. located her mother in the mall and told her mother what had happened. K.S. was described by her mother as "white as a piece of paper and just very upset."

K.S.'s mother confronted Tran and the manager. During the conversation, K.S. heard Tran "trying to tell the manager that he was just trying to put my cell phone in my back pocket. But I had sweat pants on, with no pockets and my cell phone had been in my purse back at the station." Latting testified she had gotten her nails done at Nail City over a hundred times and was never followed to the sink in the back room by her nail technician.

Tran argues the evidence was insufficient to establish that he touched K.S. with his sexual organ as opposed to a pen, lighter, wallet, pack of cigarettes, or cell phone. "The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault." *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.) (citing TEX. CODE

5

CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978)).  In this case, the jury was free to believe that K.S. felt Tran's penis touch her backside, testimony that established that Tran touched K.S., who was younger than seventeen, with his genitals.  The jury could find this act was done with specific intent to arouse or gratify Tran's sexual desire from Tran's conduct in following K.S. to the room in the back of the nail shop, patting her back, rubbing her bottom, commenting on her beauty, and then trying to justify his actions by claiming he was attempting to place K.S.'s cell phone in her nonexistent back pocket.  *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981).  Thus, we find the evidence legally sufficient to establish each element of indecency with a child by contact beyond a reasonable doubt.

**II.     There Was No Error in Allowing K.S.'s Father to Testify Over Rule 614 Objection**

Tran argues the victim-impact testimony of K.S.'s father during the punishment phase should have been struck from the record after it was discovered that he violated Rule 614 of the Texas Rules of Evidence.  Rule 614 states that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses."  TEX. R. EVID. 614. Rule 614 is commonly referred to as "the Rule."  The purpose of the Rule is to prevent witnesses from changing their testimony based on the testimony of another.  *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989).  Additionally, it improves the jury's ability to decipher false

6

testimony by revealing inconsistencies in witnesses' testimony. *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.).

**Standard of Review**

It is within the trial court's discretion to allow the testimony of a witness who has violated the Rule. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996).

> [T]he ruling of the trial court on an objection to a witness testifying when he has remained in the courtroom after having been placed under the "rule" may not be relied upon as a ground for reversal unless an abuse of discretion is shown; and until the contrary has been shown, it will be presumed on appeal that such discretion was properly exercised.

*Id*. (citing *Valdez v. State*, 776 S.W.2d 162, 170 (Tex. Crim. App. 1989). In reviewing a trial court's decision to allow testimony after an alleged violation of the Rule, we analyze "(a) whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard." *Id.* (citing *Webb*, 766 S.W.2d at 240).

Before opening statements, the Rule was invoked, and the trial court instructed the witnesses to "stay outside the courtroom" and refrain from speaking about the case with each other. The State commented that K.S.'s father was "not a witness," and the court allowed him to remain in the courtroom as "a visitor." When K.S.'s father was called as the State's only witness during the punishment phase, Tran's counsel objected based on the Rule. The objection was overruled, and K.S.'s father provided victim-impact testimony.

7

In *Bell v. State*, the Texas Court of Criminal Appeals acknowledged that the witness who violated the court's Rule 614 admonishments "could potentially have been affected by having heard testimony from appellant's punishment witnesses." *Id.* However, the court noted that the witness' "testimony and opinions clearly were based upon his own experiences and investigations in the instant case," "were not based upon any testimony from appellant's witnesses at punishment," and did not contradict any testimony from the witnesses he observed. *Id.* at 50–51. The court found that because there was not any "evidence that the testimony [the witness] heard influenced his own testimony," the trial court did not abuse its discretion in permitting him to testify.

As in *Bell*, K.S.'s father's victim-impact testimony was based on his personal observations, rather than upon testimony from witnesses during the guilt/innocence phase. His testimony did not contradict the testimony of any of the witnesses he observed. Moreover, Tran's brief does not claim, and the record does not demonstrate, that testimony from the witnesses during guilt/innocence otherwise influenced K.S.'s father's victim-impact testimony. In the absence of such an argument, we apply the presumption that the trial court exercised its discretion properly in allowing K.S.'s father to testify. Therefore, this point of error is overruled.[2]

---

[2]In its brief, the State claims that "if this Court was inclined to remand for punishment, the State requests that the full punishment range for this offense be in effect." The State points out that while the offense Tran was convicted of was a second-degree felony, the jury was charged with, and the judgment reflects, a punishment range for a third-degree offense. This issue was not raised by Tran, and is not an issue of reformation. When a judgment and sentence improperly reflects the findings of the jury, the proper remedy is reformation of the judgment. *Aguirre v. State*, 732 S.W.2d 320, 327 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g). Here, the jury was charged with an incorrect punishment range. Nevertheless, the State may not now raise this issue. The State is entitled to appeal a sentence in

8

## III.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:        February 9, 2011
Date Decided:          February 15, 2011

Do Not Publish

---

a case on the ground that the sentence is illegal, but must do so within twenty days after the sentence to be appealed is entered by the court.   TEX. CODE CRIM. PROC. ANN. art. 44.01(a), (b), (d) (Vernon Supp. 2010).   We decline to address the State's argument by circumventing our jurisdictional limitations as proscribed by Article 44.01 of the Texas Code of Criminal Procedure.