

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00174-CR

DENNIS EUGENE ALLEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR01914

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# OPINION

A jury convicted Dennis Eugene Allen of the aggravated sexual assault of his minor daughter, K.A. After entering a plea of true to the State's enhancement allegation, Allen was sentenced to fifteen years' imprisonment.[1] On appeal, Allen argues (1) that the evidence was legally insufficient to support his conviction, (2) that the trial court erred in concluding that Rebecca Peavy, the Executive Director of the Children's Advocacy Center of Paris (CAC), was the proper outcry witness, and (3) that the trial court erred in allowing Peavy to remain in the courtroom during the testimony of the State's key witnesses.[2]

We agree with Allen that the trial court erred both in determining that Peavy was the proper outcry witness and in exempting Peavy from the witness exclusion rule; however, we also conclude that the trial court's errors with respect to Peavy were harmless. We further find that the evidence was legally sufficient to support Allen's conviction. Therefore, we affirm the trial court's judgment.

## I. The Evidence Was Legally Sufficient to Support the Jury's Verdict

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found,

---

[1] In this case, the State alleged that Allen was convicted of intentionally or knowingly causing K.A.'s sexual organ to contact his mouth on or about May 13, 2012. Allen also appeals three other convictions of aggravated sexual assault against K.A. In cause number 06-13-00173-CR, Allen was convicted of intentionally or knowingly penetrating K.A.'s sexual organ with his finger on or about May 13, 2012. In cause number 06-13-00175-CR, Allen was convicted of intentionally or knowingly penetrating K.A.'s sexual organ with his finger on or about October 8, 2008. In cause number 06-13-00176-CR, Allen was convicted of intentionally or knowingly causing K.A.'s sexual organ to contact his mouth on or about October 8, 2008.

[2] Allen also argued that the trial court improperly allowed irrelevant testimony regarding a case study involving pregnant teenagers. We resolved this issue in our opinion in cause number 06-13-00173-CR.

2

beyond a reasonable doubt, that Allen committed the offense of aggravated sexual assault. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Here, the indictment alleged that, on or about May 13, 2012, Allen intentionally or knowingly caused K.A.'s sexual organ to contact his mouth. A defendant commits aggravated sexual assault of a child if he intentionally or knowingly causes the sexual organ of a child to contact or penetrate his mouth. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2013).

Twelve-year-old K.A. testified that Allen had sexually abused her many times, beginning in the second grade. She told the jury that Allen's job required him to remain away from home

during the week, but that Allen "would normally mess with [her] on Saturdays or Sundays" when he returned home.

On May 13, 2012, the date of the incident for which Allen was prosecuted, K.A., who then lived with her father, Allen, her stepmother, Jeanette Allen, her brother, Tristan, and her stepbrother, Austin, was sitting on the couch in the living room playing a handheld video game after a day of swimming and playing in the backyard. According to K.A., Allen woke her up at 10:00 p.m., picked her up and carried her to the laundry room, placed her on top of the washer and dryer, and proceeded to sexually assault her. K.A. testified, "[Allen] pulled my pants down. He was putting his tongue where I pee."

K.A. made an outcry shortly after this May 13 incident. At trial, K.A. testified, "I told my Aunt Valerie [Williams] that my dad had been doing nasty stuff to me . . . [and] I also said he puts his tongue where I pee." After Williams reported K.A.'s allegations, K.A. was taken to CAC to undergo a forensic interview conducted by Peavy. During this interview, K.A. reported this May 13 incident as well as several other instances of abuse to Peavy.

According to Peavy, K.A. reported during her CAC interview that Allen had "put her on top of the washer and dryer . . . [and] put his tongue down there where she peed" on or about May 13, 2012. However, Peavy testified that K.A.'s testimony was, at times, inconsistent with the information she provided during her CAC interview. At trial, K.A. had also testified about another incident that occurred when she was riding in Allen's truck, but she could not remember the date of this incident. According to K.A., she and Allen were on the way to the store to pick up lettuce, tomatoes, and cigarettes, when Allen offered to purchase gum for K.A. if she allowed

4

him to digitally penetrate her. K.A. testified, "[Allen] put his right hand in my shorts and started messing with his middle finger where I pee." During the CAC interview, K.A. told Peavy that the incident in the truck had also occurred May 13, 2012. Peavy also testified that K.A. discussed additional instances of abuse during her trial testimony that were not mentioned during the CAC interview and that there were inconsistencies in K.A.'s recollection of details, such as the type of clothing that she was wearing during the incidents.

Dr. Matthew Cox, a pediatrician at the University of Texas Southwestern Medical School in Dallas examined K.A. on May 31, 2012, but found no trauma or physical evidence of sexual abuse. Cox testified at trial that a lack of physical trauma was not uncommon among the victims of sexual abuse that he examined. Cox explained that penetration could occur without tearing of vaginal tissues and that any bruising or physical signs of sexual abuse might have already healed.

Allen took the stand in his own defense and testified that he was never alone with K.A. and that he never sexually assaulted her. Jeanette claimed (1) that no one had been swimming in the pool May 13, (2) that Allen went to the store by himself on that day,[3] (3) that Allen did not go to the store for lettuce or tomatoes because she served hotdogs that day, and (4) that she did not witness any sexual abuse of K.A.

Pointing to (1) inconsistencies in the record, (2) Cox's testimony that he found no physical evidence of sexual abuse, and (3) the testimony of Jeanette and her family members, Allen argues that the evidence was legally insufficient to support his conviction. Child

---

[3]Jeanette's father, Jerry Lester, testified that Allen drove by him in the truck May 13, 2012, and that no one else was in the truck with him.

complainants are "not expected to testify with the same clarity and ability as is expected of a mature and capable adult." *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990)). However, the testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd).

Here, K.A.'s testimony established that Allen intentionally or knowingly caused K.A.'s sexual organ to contact his mouth on or about May 13, 2012, as alleged in the indictment. The inconsistencies between the testimony of K.A., on the one hand, that of Allen, his wife, and her family members, on the other, as well as Cox's failure to find physical evidence of sexual abuse, merely created fact and credibility issues which the jury resolved before entering its verdict.[4] Viewing the evidence in the light most favorable to the verdict, we find the evidence legally sufficient to support Allen's conviction for aggravated sexual assault. We overrule Allen's first point of error.

## II. The Trial Court's Erroneous Conclusion that Peavy Was the Proper Outcry Witness Was Harmless

Hearsay is not admissible at trial except as provided by statute or by the Texas Rules of Evidence. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) (per curiam). Article 38.072 of the Texas Code of Criminal Procedure establishes an exception to the hearsay rule, applicable in proceedings for prosecution of sexual offenses, for statements describing the

---

[4]The trier of fact may believe all, some, or none of a witness' testimony because the fact-finder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

offense made by a child "to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (West Supp. 2013).

During a pretrial hearing, Allen challenged the State's designation of Peavy as the proper outcry witness.[5] At the hearing, Peavy testified that K.A. indicated "that she was the victim of oral sexual abuse" during the forensic interview. K.A. testified that she first told Williams that Allen had been "doing nasty things" including "put[ting] his tongue where I pee." Williams' affidavit, which was drafted on the day of Peavy's forensic interview with K.A., documented K.A.'s outcry. Williams averred that K.A. said Allen sexually abused her "all the time" and that the last time she was sexually assaulted by Allen was May 13, 2012, in her house. After simply agreeing with the State's assertion that Peavy's testimony was reliable, the trial court overruled Allen's objection to the designation and utilization of Peavy as the outcry witness.

We review a trial court's decision to admit an outcry statement under an abuse of discretion standard. *Owens v. State*, 381 S.W.3d 696, 703 (Tex. App.—Texarkana 2012, no pet.) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* (citing *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd)). Because there is no discretion in determining the applicable law, the trial court abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

---

[5]Allen also obtained a running objection to Peavy's characterization and her testimony as the outcry witness.

7

To be admissible under Article 38.072 of the Texas Code of Criminal Procedure, outcry testimony must be elicited from the first adult to whom the outcry is made. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). Admissible outcry witness testimony is not person-specific, but event-specific. *Broderick*, 35 S.W.3d at 73. To be a proper outcry statement, the child's statement to the witness must describe the alleged offense, or an element of the offense, in some discernible manner and must be more than a general allusion to sexual abuse. *Lopez*, 343 S.W.3d at 140; *Broderick*, 35 S.W.3d at 73 (citing *Thomas v. State*, 1 S.W.3d 138, 140–41 (Tex. App.—Texarkana 1999, pet. ref'd)).

On appeal, the State argues that K.A.'s statements to Williams were not an outcry because they amounted to nothing more than a general allusion to sexual abuse.[6] We disagree. K.A. testified that she first told Williams that Allen "put[s] his tongue where I pee." K.A. also stated that the incident happened in her house on the Sunday before her outcry. K.A.'s statements to Williams establishing how, when, and where the offense alleged in the State's indictment occurred constituted an outcry for purposes of Article 38.072 of the Texas Code of Criminal Procedure, and the fact that they were made to Williams made her the proper outcry witness in this case.

Because we find that the trial court erred in failing to sustain Allen's objection to Peavy's designation as the outcry witness, we must next determine whether the error was harmful. *See*

---

[6]The State also argued that, because Williams did not testify at trial, she must have been unavailable to testify. There is nothing in the record suggesting that Williams, with whom K.A. was residing at the time of trial, was unavailable.

8

TEX. R. APP. P. 44.2. "The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if the appellate court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect." *Broderick*, 35 S.W.3d at 74 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). Likewise, admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial. *Id.*

Here, K.A. testified, without objection, to the same facts that were contained in her outcry to Williams and in Peavy's trial testimony. As we previously determined, K.A.'s testimony alone was sufficient to convict Allen. Therefore, we are reasonably certain that the admission of Peavy's testimony did not influence the jury verdict or had but a slight effect. Accordingly, we find that the trial court's error in allowing Peavy to testify as the outcry witness in this case was harmless. Allen's second point of error is overruled.

## III. The Trial Court's Error in Allowing Peavy to Remain in the Courtroom Was Harmless

In our opinion in Allen's companion case, cause number 06-13-00173-CR, we determined that the trial court's decision to allow Peavy to remain in the courtroom was erroneous. We incorporate the reasoning and holding in that case and now determine whether the trial court's error was harmful.

A "'violation of an evidentiary rule, . . . is non-constitutional [error] . . . and will be disregarded unless it affected the appellant's substantial rights.'" *Bryant v. State*, 282 S.W.3d 156, 161 (Tex. App.—Texarkana 2009, pet. ref'd) (quoting *Russell v. State*, 155 S.W.3d 176,

9

181 (Tex. Crim. App. 2005)). Thus "we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect." *Ladd v. State*, 3 S.W.3d 547, 566 (Tex. Crim. App. 1999); *see* TEX. R. APP. P. 44.2(b).

Prior to cross-examining K.A., Allen's counsel attempted to explain the harm in allowing Peavy to remain in the courtroom in the following colloquy:

> [N]ow the Court has heard testimony from the child on direct. The child, quite [sic], obviously has brought up different events, other events, changed some things and so forth. That's for me to take up on my cross-examination; I understand that. My -- problem is—this goes back to Rebecca Peavy, who is now, you know, going to be our outcry witness. The Court has heard -- and also has been allowed to sit in the courtroom, over my objection to be excluded from the rule. . . .
>
> Considering the fact that the child's testimony now is drastically different -- and what the outcry has been, I'm about to cross her and explore the facts and circumstances of why that story has changed.
>
> I think I'm greatly disadvantaged by Mrs. Peavy, who heard the initial outcry and is prepared to testify under one certain way, but now she's benefitting from this additional information and is going to be preparing herself for my cross-examination of her.

Rule 614 of the Texas Rules of Evidence "prevents corroboration, contradiction, and the influencing of witnesses." *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.). In deciding whether the error of allowing Peavy to remain in the courtroom was harmful, we consider (1) whether Peavy actually heard the testimony of other witnesses, and (2) whether her testimony either contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness she heard. *See Bryant*, 282 S.W.3d at 161–62 (citing *Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989); *Wilson v. State*, 179 S.W.3d 240, 248

10

(Tex. App.—Texarkana 2005, no pet.)); *Cooks v. State*, 844 S.W.2d 697, 733 (Tex. Crim. App. 1992), *superseded on other grounds as stated in Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013); *White v. State*, 958 S.W.2d 460, 465 (Tex. App.—Waco 1997, no pet.). The appellant has the burden to demonstrate that the record supports a finding under both prongs. *Bryant*, 282 S.W.3d at 162. If both of these criteria are met, the court's decision to exempt Peavy from the Rule most likely resulted in harm. *See Ladd*, 3 S.W.3d at 566; *Cooks*, 844 S.W.3d at 733; *Chisum v. State*, 988 S.W.2d 244, 251 (Tex. App.—Texarkana 1998, pet. ref'd); *Loven v. State*, 831 S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.). However, the main "question in assessing the harm of allowing [Peavy] to remain in the courtroom is whether [s]he was influenced in h[er] testimony by the testimony [s]he heard." *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005).

Peavy testified after hearing K.A. and Cox testify. Although Peavy was finally excused at the conclusion of her testimony and did not hear the testimony of the defense witnesses before taking the stand, Peavy's testimony corroborated K.A.'s allegation that Allen caused K.A.'s sexual organ to contact his mouth on or about May 13, 2012. Initially, Peavy testified during her direct testimony that the act occurred after Allen took the child to the laundry room. During cross-examination, Peavy stated that K.A. told Peavy that the act occurred in her bedroom. Peavy stated that there were inconsistencies in K.A.'s testimony that could have been the result of the late hour and length of the CAC interview. Peavy clarified that K.A.'s trial testimony was largely consistent with the CAC interview in that it matched K.A.'s descriptions of where and what type of sexual abuse occurred at Allen's hands. It is true that Peavy's testimony did not

11

relate merely to incidental matters and that it spoke to each of the elements the State was required to prove to establish Allen's guilt on the charged offense.

After reviewing the entire record, however, we have fair assurance that the error either had no influence on the jury's deliberations or had such a slight effect that it was imperceptible. First, Peavy's testimony added nothing to K.A.'s trial testimony with respect to the sexual act that formed the basis of the State's indictment. Second, the State provided Allen with pretrial notice that Peavy would testify that K.A. told her that Allen "messed with me with his fingers and did other stuff" on May 13, 2012, that one of the sexual acts happened on the washer and dryer." Third, K.A. was twelve years old at the time of trial, and her clearly articulated testimony establishing the elements of the offense was consistent, strong, and unwavering, even in the face of cross-examination. Fourth, testifying favorably to Allen, Peavy admitted that it was possible that K.A. was lying due to the inconsistencies between her CAC interview and her trial testimony. Allen's counsel emphasized this point during closing argument, leaving the jury to struggle with the issue of K.A.'s credibility. Fifth, Allen's counsel, who was previously provided with and had reviewed a copy of the CAC interview, failed to suggest that Peavy's testimony was inconsistent with the child's CAC interview.

Peavy merely recalled the statements that K.A. made during the CAC interview, even if they were inconsistent with the statements by K.A. during trial. Therefore, because Peavy's testimony was limited to the statements by K.A. in the CAC interview, we cannot say that "[s]he was influenced in h[er] testimony by the testimony [s]he heard." *See id.* at 181. In light of the

12

entire record, we find the trial court's error in exempting Peavy from the witness sequestration rule harmless. Allen's last point of error is overruled.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     May 5, 2014
Date Decided:       June 13, 2014

Publish