

# NUMBER 13-23-00550-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**MARCELINO ELI ESPARZA,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

## ON APPEAL FROM THE 218TH DISTRICT COURT
## OF ATASCOSA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

An Atascosa County jury convicted appellant Marcelino Eli Esparza of murder, a first-degree felony, and the trial court sentenced him to sixty years' imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division. *See* TEX. PENAL CODE ANN. § 19.02(c). By six issues on appeal, Esparza contends: (1) the evidence was insufficient to support the jury's verdict; (2) his trial counsel provided constitutionally

ineffective assistance; (3) the trial court erred by denying his motion for mistrial; (4) the trial court erred by admitting certain hearsay testimony; (5) the trial court erred by allowing the recall of a witness who had violated the rule of sequestration; and (6) the trial court erred by assessing court costs against him without inquiring as to his ability to pay. We affirm.[1]

## I. BACKGROUND

A one-count, three-paragraph indictment alleged that Esparza caused the death of 47-year-old Margie Arguijo on or about August 30, 2020, by choking her and/or impeding her breath or circulation using his "hand or hands or a shower curtain." Paragraph A alleged that he intentionally or knowingly caused her death, *see id.* § 19.02(b)(1); Paragraph B alleged that he intended to cause serious bodily injury and committed an act clearly dangerous to human life which caused her death, *see id.* § 19.02(b)(2); and Paragraph C alleged that he intentionally or knowingly committed or attempted to commit an act clearly dangerous to human life which caused her death, and that he was then and there in the course of intentionally or knowingly committing the felony offense of assault-family violence by impeding breath or circulation. *See id.* § 19.03(b)(3). The indictment also contained enhancement paragraphs alleging that Esparza had previously been finally convicted of two felonies: (1) tampering with evidence in Defiance County, Ohio, in 2007; and (2) aggravated robbery in Bexar County in 1991. *See id.* § 12.42(d).

At trial, Jaimie Arguijo testified that Esparza met her mother Margie in May of 2020

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

on Facebook. Margie had been living with Jaimie at that time but she moved to live with Esparza at an RV park in Poteet. On August 29, 2020, Margie went to Jaimie's house and spent the day with Jaimie and her family. When Jaimie's husband asked Margie to spend the night, Margie said no because "she had to go home to see if [Esparza] was out" of the RV. Jaimie explained that Margie planned to move her residence again, this time to live with her previous boyfriend.

Andres Galvan lived at the same RV park in Poteet. He testified that, at around 4:00 a.m. on August 30, 2020, he heard his dog barking, and he went outside and saw Esparza sharpening a knife. At 8:00 a.m., Esparza walked up to Galvan's RV and said he "needed help." Galvan got dressed and went to Esparza's RV, which was "pitch dark" inside. Galvan saw a woman lying in the RV's bathtub, and Esparza asked Galvan to pick the woman up. Galvan noticed the woman was "pale," so he "got scared" and called 911. At some point, Galvan gave the phone to Esparza, and Esparza told the dispatcher that the woman was unconscious, barely breathing, and had a weak pulse. Esparza was instructed over the phone to perform CPR on the woman, and he did so. When medics and police arrived, they found that the woman, identified as Margie, was cold to the touch and had been deceased for several hours.

Investigators observed "ligature marks underneath [Margie's] neck." An autopsy showed that Margie's thyroid cartilage was fractured, there were petechiae on her left eye, her ribs were fractured, and there were several healing abrasions on her face and upper abdomen. The forensic pathologist testified that the cause of death was strangulation, and the manner of death was most likely homicide due to the thyroid cartilage fracture. He also stated that, although there was methamphetamine found in

3

Margie's system, she did not die of an overdose.

Esparza told police at the scene that, earlier that morning, he was "using an angle grinder to restore a machete for someone." He said he told Margie that "he was going to leave," but she "didn't want him to." Esparza told police that went back inside his RV "to let her know that he was leaving," but when he tried to shut the door to the bathroom, he noticed Margie was "slumped over," blocking the doorway. He told police that no one could have gone in or out of the RV while he was outside sharpening the machete.

In searching the RV, police discovered a shower curtain which an officer described as follows:

> There was a very, very thin, almost like a Dollar Store material, a very thin, thin plastic, yellowish in color and it had been deformed by being stretched. It was wrapped a couple of times around the shower curtain rod and at the top you could see obvious signs and if you take a piece of plastic and pull it, that discoloration and stretch that you get, there was a section of shower curtain at the top that exhibited that. In the middle, it was twisted around and around and around like you would be twisting up a newspaper or something; and then at the bottom, it was stretched and disfigured again. And there was a small piece of the shower curtain that had been completely torn away from the shower curtain.

Esparza was convicted and, after pleading true to the enhancement paragraphs in the indictment, he was sentenced as set forth above. This appeal followed.

## II. EVIDENTIARY SUFFICIENCY

By his first issue, Esparza contends the evidence was "factually and legally insufficient" to support his conviction. He sets forth the language of the indictment and penal code § 19.02, and he cites outdated authority establishing the applicable standard of review. *See, e.g.*, *Zuniga v. State*, 144 S.W.3d 477, 481–84 (Tex. Crim. App. 2004) (setting forth factual sufficiency standard), *abrogated by Brooks v. State*, 323 S.W.3d 893, 899–900 (Tex. Crim. App. 2010) (plurality op.) (abolishing factual sufficiency review in

4

Texas). He then provides the following argument, which we reproduce in its entirety:

> A scintilla of evidence was not introduced by the State that [Esparza] (1) intentionally and knowingly caused the death of Margie Arguijo; (2) with intent to cause serious bodily injury to Margie Arguijo, [he] committed an act clearly dangerous to human life that caused the death of Margie Arguijo; or (3) committed the felony of Assault Family Violence-Impeding Breath/Blood/Circulation. While circumstantial evidence can be evidence, insufficient of even that was presented. As such, this Court should find that there was legally and factually insufficient evidence to support the jury's verdict, and the conviction of [Esparza] should be reversed and a verdict of acquittal entered.

Esparza does not cite any portion of the record to support this issue. He does not explain the facts of the case,[2] nor does he apply any authority to those facts. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (noting that "an appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record" (internal quotation omitted)). In the absence of anything resembling legal analysis, we overrule the issue as inadequately briefed.[3]

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Esparza contends that his court-appointed trial counsel rendered constitutionally ineffective assistance. *See* U.S. CONST. amend. VI; TEX. CONST.

---

[2] The "Statement of Facts" section of Esparza's brief similarly fails to describe any facts shown by the evidence at trial. *See* TEX. R. APP. P. 38.1(g) ("The brief must state concisely and without argument the facts pertinent to the issues or points presented.").

[3] Even if the issue was adequately briefed, we agree with the State that the witness testimony of the victim's daughter, Esparza's neighbor, the investigators, and the forensic pathologist supports the jury's verdict. *See Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) ("Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt."); *see also* TEX. PENAL CODE ANN. § 19.02(b) (setting forth essential elements of murder).

5

art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland*, 466 U.S. at 687). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). "The prejudice prong of *Strickland* requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* The appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689. "[W]e commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

## A.  Enhancement Paragraph

Esparza contends his trial counsel rendered ineffective assistance for three reasons. First, he argues that counsel erred by "hav[ing] his client plead 'true'" to the first enhancement paragraph alleging that he was previously convicted of the felony offense of tampering with evidence in Ohio in 2007. Esparza notes that, according to a copy of an Ohio judgment which was entered into evidence at the punishment phase, his sentence for that offense was suspended and he was placed on probation; he argues without reference to authority that the Ohio conviction was therefore not "final." He also contends that "no analysis ever occurred" concerning whether the Ohio offense "would have comported with Tampering with Evidence as set forth in Texas Penal Code [§] 37.09, which can be either a felony or a misdemeanor."

Under the habitual felony offender (HFO) statute, when a defendant is convicted of a felony and it is shown that he "has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final," the applicable punishment range is enhanced to twenty-five to ninety-nine years. TEX. PENAL CODE ANN. § 12.42(d). "An out-of-state prior final felony conviction can be used to enhance a sentence imposed in Texas." *Ex parte Pue*, 552 S.W.3d 226, 231 (Tex. Crim. App. 2018). (citing U.S. CONST. art. IV, § 1 (Full Faith and Credit Clause)). Whether an out-of-state prior conviction is "final" under § 12.42(d) is determined in accordance with Texas law, and it is the State's burden to prove finality. *Id.* at 229, 231. A conviction is not "final" for enhancement purposes when the imposition of sentence has been suspended and probation granted, though "a probated sentence can turn into a final conviction if probation

7

is revoked." *Id.* at 230–31.

At the punishment phase, the State offered into evidence a December 18, 2007 judgment in which Esparza was convicted in Ohio of aggravated assault and tampering with evidence. *See* OHIO REV. CODE ANN. §§ 2903.12(a)(2), 2921.12(a)(1). The judgment states that Esparza was sentenced to seventeen months' and three years' confinement in the Ohio Department of Rehabilitation and Correction for the respective offenses, with the sentences to run consecutively. For purposes of the HFO statute, "any conviction not obtained from a prosecution under [the Texas Penal Code] shall be classified as . . . [a] 'felony of the third degree' if imprisonment in the Texas Department of Criminal Justice or another penitentiary is affixed to the offense as a possible punishment." TEX. PENAL CODE ANN. § 12.41(1). Because imprisonment in a penitentiary was a possible punishment for the Ohio tampering charge, it was a felony for purposes of the HFO statute. *See id.*; *Fowler v. State*, 567 S.W.3d 403, 405 (Tex. App.—San Antonio 2018, no pet.) (concluding that appellant's federal escape conviction could be used for enhancement purposes because appellant was sentenced to twelve months' imprisonment for the offense, and it was therefore "self-evident that imprisonment in a penitentiary '[was] affixed to the offense as a possible punishment'").

As Esparza emphasizes, however, the punishment-phase evidence also included a second judgment, dated July 31, 2008, reflecting that the Ohio court granted Esparza's "Motion for Judicial Release." The judgment suspends "the balance of the . . . [prison] term previously imposed" and places Esparza on probation for four years.[4] The State does not address whether the July 31, 2008 judgment rendered Esparza's tampering

---

[4] The judgment also states: "The Court reserves the right to reimpose the prison term."

conviction non-final for purposes of the HFO statute.[5] *See Pue*, 552 S.W.3d at 230–31.

Even assuming (1) that counsel advised Esparza to plead true to the first enhancement paragraph and (2) that such advice constituted ineffective assistance, we cannot conclude that Esparza was sufficiently prejudiced so as to entitle him to reversal. Regarding the second *Strickland* prong, Esparza asserts without reference to the record or legal authority that "[t]here is only harm in allowing an offense that would not be admissible and would not increase the range of punishment as was done in this cause." However, there is no dispute that the second enhancement allegation was true; thus, even if Esparza pleaded not true to the first paragraph and the trial court found it not true, he would still have been subject to a mandatory fifteen-year minimum prison term under the repeat felony offender (RFO) statute. *See* TEX. PENAL CODE ANN. § 12.42(c)(1). And, as Esparza notes, enhancement in this case did not increase the maximum punishment because murder is a first-degree felony which already carries a maximum punishment of ninety-nine years' imprisonment. *See id.* § 12.32(a).

On this record, we do not find "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

## B.    Jury Unanimity

Second, Esparza argues his counsel was ineffective because he failed to object to the indictment or the jury charge, both of which he claims allowed for a non-unanimous verdict. Specifically, he contends that a non-unanimous verdict was possible because the

---

[5] We note that the Texas Court of Criminal Appeals has held that "shock" probation—in which the defendant is convicted, punishment is assessed, and sentence is imposed, but "later the further execution of the sentence is suspended"—renders a conviction "non-final for purposes of enhancement." *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992).

offense alleged in Paragraph B of the indictment required proof of a different culpable mental state (intent to cause serious bodily injury) than the offenses alleged in Paragraphs A or C (intent to cause death and intent to commit an act clearly dangerous to human life, respectively). *See* TEX. PENAL CODE ANN. § 19.02(b). He asserts "there is no possible strategy argument" for counsel's failure to object to the indictment and jury charge on this basis.

Texas law requires the jury in a felony case to reach a unanimous verdict about "the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (citing *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008)); *see* TEX. CONST. art. V, § 13. This means that each juror must agree that the defendant committed the same specific criminal act. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). However, jurors need not agree on all the underlying facts that make up a particular element of the offense. *Id.* at 747.

The Texas Court of Criminal Appeals has held that "intentional[] or knowing[]" murder under § 19.02(b)(1) and felony murder under § 19.02(b)(3) are "different ways of committing the same offense." *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982). Therefore, the unanimity requirement is not violated when the jury is charged disjunctively on those allegations. *See id.* Several Texas appellate courts, including the transferor court in this case, have similarly concluded that "intentional[] or knowing[]" murder under § 19.02(b)(1) and "act clearly dangerous to human life" murder under § 19.02(b)(2) are different manners and means of committing the same offense, for which jury unanimity is not required. *See Diko v. State*, 488 S.W.3d 855, 859 (Tex. App.—Fort Worth 2016, pet. ref'd) (noting that "[§] 19.02(b)(1) and 19.02(b)(2) do not describe

10

different offenses; rather, they set forth alternative methods of committing the same offense"); *Garcia v. State*, 246 S.W.3d 121, 141 (Tex. App.—San Antonio 2007, pet. ref'd) ("[W]hether the jury determined that [appellant] intentionally or knowingly caused the death of [victim], or that he caused her death by committing an act clearly dangerous to human life with the intent to cause serious bodily injury, there was only one single crime of murder."); *Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("Although [§] 19.02(b)(1) and (b)(2) differ in their descriptions of the mental state required for culpability, jurors are not required to agree on the defendant's specific mental state; rather, they need only agree that the defendant possessed one of the alternate mental states that satisfy the element of intent under the statute."); *Barfield v. State*, 202 S.W.3d 912, 916 (Tex. App.—Texarkana 2006, pet. ref'd) (noting, where [§] 19.02(b)(1) and (b)(2) were charged disjunctively, that "[t]he jury's verdict represents the necessary unanimous finding that [appellant] murdered [the victim] under [§] 19.02 of the Texas Penal Code")*.*

The record does not affirmatively establish that Esparza's trial counsel provided ineffective assistance on this basis. *See Thompson*, 9 S.W.3d at 813.

## C.     Extraneous Offense Evidence

Third, Esparza contends his counsel was ineffective by failing to timely object to a "[v]ideo [which] was presented to the jury regarding [Esparza] going to prison" for an unrelated offense. He directs us to a portion of the trial record in which his counsel attempted to object to a video on Rule 404(b) grounds the morning after the video was admitted into evidence and played for the jury. Counsel explained that she did not initially object because she "didn't want to draw more attention to it." The State offered to redact

11

the subject video so that, "if the jury goes back and looks for it, [the offending statements] won't be there." The trial court granted defense counsel's objection to that extent, and it also granted counsel's request for a limiting instruction. It denied counsel's motion for mistrial.

Esparza claims admission of the video was "harmful and prejudicial." He cites *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985), in which it was stated: "To pass over the admission of prejudicial and arguably inadmissible evidence may be strategic; to pass over the admission of prejudicial and clearly inadmissible evidence, as here, has no strategic value."

Esparza does not specify where the video may be found in the appellate record, *see* TEX. R. APP. P. 38.1(i); thus, we are unable to independently evaluate whether the subject statements were indeed "clearly inadmissible," as he claims.[6] Nevertheless, even assuming that they were "clearly inadmissible," we cannot conclude that either *Strickland* prong has been met. Counsel offered a strategic reason for her decision not to timely object to the video. Even "assuming counsel's challenged action, though strategic, could not be considered soundly strategic, that would not necessarily establish that trial counsel performed deficiently under the first prong of *Strickland* because counsel's performance must be judged by the totality of the representation." *Robertson v. State*, 187 S.W.3d 475, 483–84 (Tex. Crim. App. 2006) (footnote omitted) (noting that "[i]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one

---

[6] The State's brief asserts that the video is the record as State's Exhibit 8. However, State's Exhibit 8 is a 25-second video recording, without any audio, apparently taken from inside the RV where Margie died. No other video recordings are part of the appellate record in this case.

portion of trial counsel's performance for examination"). As to prejudice, it is undisputed that neither party mentioned the offending statements to the jury. Further, the trial court issued a limiting instruction and directed the State to redact the video in the event the jury wished to review it during its deliberations. Esparza has not established his entitlement to reversal on this basis.

We overrule Esparza's second issue.

## IV. MOTION FOR MISTRIAL

By his third issue, Esparza contends the trial court erred by denying his motion for mistrial relating to the video described above in our discussion of the third part of Esparza's second issue. He claims that the video contained evidence of an "alleged extraneous offense" and his "prior prison experience" and was therefore inadmissible under Texas Rule of Evidence 404(b).

Esparza cites the portion of the record in which his counsel moved for mistrial, but he does not provide any record reference to the video itself. *See* TEX. R. APP. P. 38.1(i). Moreover, though he cites Rule 404(b) and cases applying the rule, he cites no legal authority concerning the applicable standard of review, when a motion for mistrial is timely, or when a trial court errs in denying a motion for mistrial. *See id.* We overrule Esparza's third issue as inadequately briefed.

## V. ADMISSION OF EVIDENCE

By his fourth issue, Esparza contends that the trial court abused its discretion by "allowing hearsay statements" by Jaimie "to be presented to the jury." He points to a portion of the trial record in which his counsel, outside the presence of the jury, requested that the State redact certain statements from a video recording which was going to be

admitted into evidence. Counsel explained that, in the video, investigators can twice be heard telling Esparza that "[Jaimie] told them that [Margie] was afraid of [Esparza]."[7] The trial court denied counsel's request to have these statements redacted from the video.

On appeal, Esparza contends that the statements were hearsay; however, he does not explicitly claim that the statements were inadmissible, nor does he provide any argument that would support such a conclusion. *See* TEX. R. EVID. 801, 803, 804 (setting forth various exclusions and exceptions to the rule against hearsay). Moreover, he does not cite or apply any legal authority setting forth the hearsay rule or otherwise concerning whether and when hearsay statements are inadmissible. Finally, though he cites authority concerning reversible error, *see* TEX. R. APP. P. 44.2(b), his entire argument as to how he was harmed by the trial court's alleged error is as follows: "In this case, the hearsay introduced to the jury was of a highly prejudicial nature that cannot be considered to be 'not influence or had only a slight influence [sic].'" The issue is overruled as inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (noting that non-constitutional error is not reversible "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly" (emphasis omitted)).

By his fifth issue, Esparza contends that the court erred by allowing Jaimie to be recalled as a rebuttal witness in violation of Texas Rule of Evidence 614. *See* TEX. R. EVID. 614 (providing that the trial court must, on any party's request, instruct witnesses to remain outside the courtroom so that they cannot hear other witnesses' testimony). He

---

[7] Again, Esparza does not provide any record references to the video itself, and the State incorrectly refers to the video as State's Exhibit 8.

cites a portion of the trial record in which the prosecutor requested to recall Jaimie after the defense closed its case-in-chief. He does not provide a record reference to Jaimie's rebuttal testimony, nor does he describe the content of that testimony, nor does he explain how the admission of that testimony harmed him. *See Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989) ("[A] violation of [Rule 614] is not in itself reversible error, but only becomes so where the objected-to testimony is admitted and the complaining party is harmed thereby."); *Haas v. State*, 498 S.W.2d 206, 210 (Tex. Crim. App. 1973) (noting that, when determining whether it was error to allow testimony of a witness who has violated the Rule, "[t]wo relevant criteria are: (1) did the witness actually hear the testimony of the other witness, and (2) did the witness'[s] testimony contradict the testimony of the witness that he allegedly heard"); *see also* TEX. R. APP. P. 44.2(b). Esparza's fifth issue is overruled as inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

## VI. COURT COSTS

Finally, by his sixth issue, Esparza asserts that the trial court erred by assessing $315 in court costs against him without holding an ability-to-pay hearing on the record pursuant to Texas Code of Criminal Procedure article 42.15(a-1). *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1) ("Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court . . . , a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs.").

Esparza concedes that he did not request an ability-to-pay inquiry on the record, nor did he object to the lack of such an inquiry. *See id.* art. 42.15(a-2) ("A defendant may waive the requirement for the inquiry described by Subsection (a-1) to be on the record.");

*see also* TEX. R. APP. P. 33.1 (concerning preservation of error for appeal). In *Cruz v. State*, the Texas Court of Criminal Appeals held that, because "[a]n ability-to-pay inquiry is not fundamental to the adjudicatory system," it is a *Marin* category-three right—i.e., it must be "implemented upon request or else forfeited." 698 S.W.3d 265, 269 (Tex. Crim. App. 2024); *see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).[8] In light of the foregoing, we conclude Esparza forfeited his right to an on-the-record article 42.15 ability-to-pay hearing by failing to request one in the trial court. *See Cruz*, 698 S.W.3d at 271; TEX. R. APP. P. 33.1(a). We overrule his sixth issue.

## VII. CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
13th day of March, 2025.

---

[8] The *Cruz* Court observed that "missing out" on an article 42.15 hearing "would not doom a defendant to undue hardship" because "[t]he same relief from fine and costs . . . is available forever after sentencing" under article 43.035. *Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024); *see* TEX. CODE CRIM. PROC. ANN. art. 43.035(a) ("If a defendant notifies the court that the defendant has difficulty paying the fine and costs in compliance with the judgment, the court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant."); *id.* art. 43.035(c) ("If the court determines at the hearing under Subsection (a) that the portion of the judgment regarding the fine and costs imposes an undue hardship on the defendant, the court shall consider whether the fine and costs should be satisfied through one or more methods listed under Article 42.15(a-1).").

16